IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GATEWAY SPINE & JOINT LLC ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. **4:22-mc-00699** |
| ) | |
| K&B TRANSPORTATION and ) | |
| GERALD BOUTWELL, ) | |
| ) | |
| Respondents. ) | |

**NON-PARTY GATEWAY SPINE & JOINT LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA IN PART**

Respondents K&B Transportation and Gerald Boutwell have served on Movant Gateway Spine & Joint LLC a subpoena to produce documents and for a Rule 30(b)(6) deposition (the "Subpoena") in a personal injury lawsuit pending in the United States District Court for the Southern District of Illinois and captioned *Kaitlyn P. Pruitt v. K&B Transportation, et. al.*, Case No. 3:20-cv-750-NJR (hereinafter, the "underlying action"). The Subpoena, dated August 1, 2022, directs a corporate representative of Gateway to appear for deposition on August 22, 2022 in St. Louis, Missouri, and testify about eleven topics. The Subpoena also directs Gateway to produce documents and tangible things in response to fifteen separate document requests. Gateway moves this Court under Federal Rules of Civil Procedure 26 and 45 for a protective order forbidding discovery of and quashing two of the deposition topics and four of the document requests.

The deposition topics and requests are a proverbial "fishing expedition" that would result in significant and undue burden to Gateway, a non-party to the underlying action, and that would yield limited, if any, relevant information. For example, one request purports to require Gateway to search its files and all of its patient records for the last *ten* years to identify all patients that may

have been clients of the Plaintiff's law firm. The extreme burden imposed by such a request is not close to being proportional to the needs of the underlying action. Other requests and topics seek highly confidential business and proprietary information that bears little, if at all, on the underlying action. Gateway has conferred with counsel for Respondents about these issues, and has indicated its willingness to produce documents responsive to the requests (to the extent they exist) and provide testimony about the topics not at issue in this Motion. But Respondents refused to withdraw the six requests and topics at issue, each of which is improper, and so Gateway has been forced to file its Motion.

This Court is the proper venue for Gateway's Motion because the Subpoena requires compliance in this District—specifically, in St. Louis, Missouri. *See* Ex. 1, Subpoena; Fed. R. Civ. P. 45(d)(3) ("The court for the district where compliance is required must quash or modify a subpoena that," for example, "subjects a person to undue burden."); Fed. R. Civ. P. 26(c) (permitting party to move for a protective order, "on matters relating to a deposition," in the district where the deposition will be taken).

Because the Subpoena is overbroad, unduly burdensome, seeks (1) irrelevant and (2) confidential, proprietary information, Gateway respectfully requests this Court quash Document Request Nos. 2 and 9, and Deposition Topic Nos. 6-8, and 11.

## **Legal Standard**

Federal Rule of Civil Procedure 45 governs the issuance of third-party subpoenas in civil actions pending in the federal courts. *Gregg v. B&G Transportations, LLC*, 2021 WL 1598969, at *2 (E.D. Mo. Apr. 23, 2021). The Rule requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). It also requires a court, on timely

motion, to quash or modify a subpoena that subjects a person to such a burden or "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). "A party seeking to quash a subpoena bears the burden to demonstrate that compliance would be unreasonable or oppressive." *Gregg*, 2021 WL 1598969, at *2 (quoting *Memhardt v. Nationstar Mortg., LLC*, 2018 WL 705052, at *2 (E.D. Mo. Feb. 5, 2018). As to the protective order Gateway Spine seeks, Rule 26 provides that "for good cause shown, the court...in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Forrest Crompton v. 5–hour Energy*, 2016 WL 4061881, at *2 (E.D. Mo. July 29, 2016) (citing Fed. R. Civ. P. 26(c)). "The federal rules 'confer broad discretion on the district court to decide when a protective order is appropriate and what degree of protection is required.'" *Forrest Crompton*, 2016 WL 4061881, at *2 (citing *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

"The factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Centrix Fin. Liquidating Tr. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 3225802, at *2 (E.D. Mo. June 25, 2013) (quoting *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4856968, at *2 (E.D. Mo. Oct. 12, 2012). Courts apply these factors to subpoenas both for documents and for deposition testimony. *E.g., Enter. Holdings, Inc. v. McKinnon*, 2014 WL 5421224, at *1 (E.D. Mo. Oct. 23, 2014). "'Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.'" *Par Pharmaceuticals, Inc. v. Express Scripts*

*Specialty Distribution Servs., Inc.*, No. 2018 WL 264840, at *2 (E.D. Mo. Jan. 2, 2018) (quoting Miscellaneous *Docket Matter No. 1*, 197 F.3d at 927). "Where, as here, discovery is sought from a non-party, courts have wide latitude in deciding motions regarding non-party subpoenas, and courts are directed to 'give special consideration in assessing whether the subpoena subjects a non-party to annoyance or an undue burden or expense.'" *Par Pharmaceuticals*, 2018 WL 264840, at *2 (citing *Enter. Holdings, Inc.*, 2014 WL 5421224, at *1).

## Factual Background

Respondents have characterized the underlying lawsuit, a personal injury suit pending in the Southern District of Illinois, as a "truck accident case." Ex. 3 at 3. Respondents have stated that the issues in this lawsuit are "who caused the accident and whether [Defendant] Gerald Boutwell was qualified to operate the vehicle." *Id.* at 3. Gateway's only involvement in this matter is that Gateway provided medical treatment to the Plaintiff. Stated differently, Gateway is a treating provider.

The Subpoena, attached hereto as Exhibit 1, seeks both documents and testimony, in the form of a deposition under Rule 30(b)(6), from Gateway Spine. The improper deposition topics and document requests track one another and fall into two broad categories, each of which is discussed in turn.

## Argument

**I.      Document Request No. 9 and Deposition Topic No. 11—Which Seek Irrelevant Information As Much as Ten Years Old—Should Be Quashed Because They Impose an Undue Burden on Gateway, a Non-Party.**

Request No. 9 seeks "[a]ll marketing materials distributed to any member of Plaintiff's present or past legal team within the last ten years," and Topic No. 11 seeks information about "[a]ll other lawsuits or claims for which any client of Goldblatt & Singer has been referred to

4

and/or treated by Gateway Spine and Joint and/or Dr. Eric Sincoff within the last ten years." Ex. 1 at 8, 12. In meet and confer discussions, Respondents' counsel refused to withdraw these requests and offered instead to (1) change the time frame in Request No. 9 to the last five years, and (2) change Topic No. 11 to not require the disclosure of any patient names. Even with these changes, these requests are still unduly burdensome for a non-party like Gateway to comply with. Topic No. 11, for example, still requests Gateway to search its files for the last ten years. These requests should be quashed.

      A.      **The Requests Are Unduly Burdensome.**

Rule 26 permits a court to forbid discovery to protect any person from "annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 45 requires the Court to quash a subpoena that "subject a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii). Courts in this district analyze the requirements together. *E.g.*, *Enter. Holdings, Inc.*, 2014 WL 5421224, at *1 (pursuant to Rules 26 and 45, quashing subpoena seeking documents and testimony because the information it sought was "incredibly extensive" that "would only be tangential to the issues in the underlying lawsuit"). "The factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Centrix Fin. Liquidating Tr.*, 2013 WL 3225802, at *2 (quoting *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4856968, at *2). "Where, as here, discovery is sought from a non-party, courts have wide latitude in deciding motions regarding non-party subpoenas, and courts are directed to 'give special consideration in assessing whether the subpoena subjects a non-party to annoyance or an undue burden or expense.'" *Par Pharmaceuticals*, 2018 WL 264840, at *2 (citing *Enter. Holdings, Inc.*, 2014 WL 5421224, at *1).

Beyond requiring a court to quash a subpoena that subjects a person to undue burden, Rule 45 specifically requires that the party serving the subpoena must "take reasonable steps to avoid imposing undue burden or expense on" the person on whom it is served. Fed. R. Civ. P. 45(d)(1) ("The court for the district where compliance is required must enforce this duty [to take reasonable steps to avoid imposing undue burden] and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.").

Respondents have ignored this requirement entirely. Indeed, the burden to comply with these requests would be astronomical. Topic No. 11 seeks ten years' worth of information about "[a]ll other lawsuits or claims for which any client of" the Plaintiff's law firm "has been referred to and/or treated by" Gateway and/or Dr. Eric Sincoff. Ex. 1 at 8. But not all of Gateway's patients are referred or represented by a law firm, and Gateway does not maintain a list of what law firm (if any) refers or represents any patient. Ex. 2, Carlton Decl., ¶ 3. Therefore, to comply with Topic No. 11, Gateway would have to search every single patient file for every patient since the company was founded in October 2017. *Id.*, ¶ 4. This would include searching thousands of patient files, some of which are kept in paper form and not available electronically. *Id.*, ¶ 5. This process would take, conservatively, hundreds of hours of employee time, disrupt the company's normal business operations, and be a significant burden. *Id.* Given all of the foregoing, compliance with Topic No. 11 is the very definition of an undue burden.[1] The same is true for Request No. 9, which seeks all "marketing materials" sent to Plaintiff's "past or present legal team" within the last ten years. *See* Ex. 1 at 9. Even with Respondents' offer to modify this request to only the last five years,

---

[1] As originally requested, this topic sought protected health information, but Respondents agreed to change it to require only the disclosure of the number of patients and/or lawsuits. This change does not cure the burden issue because the process to obtain that information is the same (and as detailed herein).

6

compliance would still be unduly burdensome because it would require search of all of Gateway's files, some of which are kept in paper form. Ex. 2, Carlton Decl., ¶ 6.

Among the three factors courts consider in evaluating the propriety of a subpoena, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.'" *Par Pharmaceuticals*, 2018 WL 264840, at *2 (E.D. Mo. Jan. 2, 2018) (quoting *Miscellaneous Docket Matter No. 1*, 197 F.3d at 927); *id.* (courts must "give special consideration in assessing whether the subpoena subjects a non-party to annoyance or an undue burden or expense"). As detailed above with regard to the extreme burden imposed by compliance with these two requests, this factor weighs heavily in favor of quashing Request No. 2 and Topic No. 11.

*Par Pharmaceuticals*, 2018 WL 264840 at *1, is instructive. There, the plaintiff in an underlying patent case sought fifteen years of highly confidential patient information from non-party Express Scripts. *Id.* Express Scripts argued that producing fifteen years of records would require manual work and hamper its regular business operations because the documents were not available through database searches. *Id.* at *2. The Court credited these arguments and denied a motion to compel compliance with the subpoena, finding that the disclosure of the information was "not proportional to the needs of" the underlying litigation and that "compliance with such a broad subpoena would impose undue burden and expense on a non-party to this case." *Id.* The exact same is true here. Compliance with these requests would require an inordinate amount of work and would be a substantial burden. It is not at all proportional to the needs of this "trucking accident case," nor does the information sought bear on the issues in the underlying case. *See* Ex. 2-3.

### B. The Request Seek Irrelevant Information for Which There is No Need.

The other two factors in consideration of the propriety of these requests, the relevance of the discovery sought and the requesting party's need, also weigh in favor of quashing them. *See Centrix Fin. Liquidating Tr.*, 2013 WL 3225802, at *2. The scope of these requests is clearly overbroad in both scope and time, which supports that they should be quashed. *See, e.g., Lightspeed Media Corp. v. Smith*, 2014 WL 12903507, at *1 (S.D. Ill. Feb. 19, 2014) ("An overly broad subpoena may be quashed pursuant to Federal Rule of Civil Procedure (d)(3)(A)(iv) as unduly burdensome."). Gateway treated the Plaintiff for her injuries, and stands ready to produce documents related to that treatment. Gateway's connection to the underlying action is as a treating provider. That is all. Whether Gateway has treated other patients that, either before or after Gateway has treated them, were or became clients of the Plaintiff's law firm is far afield from any issue in the underlying "truck accident case." *See* Ex. 3 at 3. Again, Respondents have identified the issues in the case as being "who caused the accident and whether [Defendant] Gerald Boutwell was qualified to operate the vehicle." *Id.* Also, to be certain, just because Gateway treated a client of Goldblatt Singer does not mean the law firm sent them to Gateway. This basic fact makes clear the highly limited relevance of this information, if it has any relevance at all. More generally, the remote connection of this information to the actual issues in the underlying action casts doubt on whether Respondents have any need at all for this information.

A district court in the Southern District of Illinois, where the underlying action is pending, has quashed requests seeking very similar information. In *Waters v. Taylor & Hall Transp., LLC*, 2018 WL 1565616, at *1 (S.D. Ill. Mar. 30, 2018), a personal injury auto accident case like this one, the defendants served a subpoena on the plaintiff's treating provider that sought the amount of payments the treating provider had received from the plaintiff's law firm for other patients. As

8

the Court stated, the defendants "believe there is significant evidence of an ongoing financial relationship between" the treating provider and the Plaintiff's law firm. *Id.* Defendants asserted their request was "narrowly tailored to the specific issue of the referral relationship" between the provider and the law firm. *Id.* The Court rejected these arguments and found that the request was "overly broad and not proportional to the needs of the case." *Id.* at 2. It quashed the portion of the subpoena requesting "payments related to patients that are not parties to this case" because that request confused the issues and the burden of producing the information outweighed any probative value. *Id.*

Here, as in *Waters*, Respondents' subpoena seeks information about the supposed referral and/or financial relationship between Gateway and the Plaintiff's law firm. Request No. 9 and Topic No. 11, should be quashed just like the request in *Waters*, especially in light of the undue burden they impose.

**II.      Document Request No. 2 and Deposition Topic Nos. 6-8 Should Be Quashed Because they Require Disclosure of Highly Confidential Business and Proprietary Information Not Relevant to the Underlying Action.**

Request No. 2 seeks Gateway's confidential business information. It requests as follows:

> All communications between your office or offices and any medical funding or litigation funding provider regarding this patient, specifically including: a. All contracts with any medical funding or litigation funding provider; b. All reports to any medical funding or litigation funding provider; c. All applications for funding or requests that funding be provided to cover 'overhead' regarding any treatment issued to this Plaintiff; d. All communications with any medical funding or litigation provider concerning the above-referenced Plaintiff, her treatment, medical bills, or this litigation.

Ex. 1 at 10. Similarly, Topic Nos. 6-8 seek information about Gateway's relationship with "any medical funding or litigation funding" provider:

> 6. All communications or agreements between Gateway Spine and Joint LLC and any medical funding or litigation funding provider regarding this patient, specifically including: a. All contracts with any medical funding or

9

      litigation funding provider; b. All reports to any medical funding or litigation funding provider; c. All applications for funding or requests that funding be provided to cover "overhead" regarding any treatment issued to this Plaintiff;

      7. Your business relationship with LAF Medical Services, LLC d/b/a Surg-Assist (hereinafter "Surg-Assist"), and any other entity involved in medical funding or litigation funding, including the nature of any services provided to you by Surg-Assist and/or any other entity involved in medical funding or litigation funding.

      8. All communications or agreements between Gateway Spine and Joint LLC and Surg-Assist, and any other entity involved in medical funding or litigation funding, regarding this patient, specifically including:
a. All contracts with Surg-Assist and any other entity involved in medical funding or litigation funding;
b. All reports to or from Surg-Assist and any other entity involved in medical funding or litigation funding;
c. All applications for funding or requests that funding be provided to cover "overhead" regarding any treatment issued to this Plaintiff;
d. All advertising or marketing materials provided to you by Surg-Assist and any other entity involved in medical funding or litigation funding.

Ex. 1 at 10.

      Rule 45 specifically states that this Court may quash a subpoena that requires disclosure of a "trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 45(d)(3)(B)(i), and Rule 26 allows the courts to require "that a trade secret or other confidential research, development, or commercial information not be revealed[.]" Fed. R. Civ. P. 26(c)(1)(G).

      As relevant here, these requests seek information about whether or not Gateway has entered into an agreement to sell some or all of any medical bill for a particular patient to a third party, and, if so, the terms of such contract. Ex. 2, Carlton Decl., ¶ 7. This information is highly confidential, as are the amount of and specific terms regarding such a sale. *Id.* This information is not publicly available, and Gateway does not share it with competitors. *Id.* Producing it would be detrimental to the business of Gateway and the company would suffer harm if this information was

obtained by its competitors, because any such competitor could use it to gain a competitive advantage over Gateway. *Id.*, ¶ 8. Subpoenas seeking such confidential and proprietary information are properly quashed. *E.g.*, *Enter. Holdings, Inc.*, 2014 WL 5421224, at *1.

Respondents themselves, in the underlying action, moved to quash a subpoena served by the Plaintiff that sought what Respondents called "a confidential and proprietary business contract." Ex. 3 at 2-3. Respondents argued that the contract, "which contains sensitive financial and business information, is irrelevant to this truck accident case." *Id.* at 3. The same is true here; these subpoena requests seek confidential and proprietary business contracts that include sensitive financial and business information, all of which is not relevant to this truck accident case. *See id.*; *see also* Ex. 2, Carlton Decl., ¶ 7 (explaining confidential nature of information sought).

Request No. 2 and Topic No. 6-8 also seek information with limited, if any, relevance to the underlying lawsuit. Whether or not Gateway sells any patient's medical bill, the entire amount of such bill remains outstanding and due to be paid. *Id.*, ¶ 9. There is simply no relevance to this information, and certainly no relevance to the issues Respondents have identified in the case: "who caused the accident and whether [Defendant] Gerald Boutwell was qualified to operate the vehicle." Ex. 3 at 3.

Relatedly, Topic No. 7 is vastly overbroad and seeks clearly irrelevant information. It requests testimony about Gateway's "business relationship" with *any* medical funding or litigation funding company, and is not limited to even just those companies that might have a connection to the Plaintiff. The topic is another fishing expedition and should be quashed. The information it seeks is at best "tangential to the issues in the underlying lawsuit[.]" *See Enter. Holdings, Inc. v. McKinnon*, 2014 WL 5421224, at *1 (E.D. Mo. Oct. 23, 2014) (quashing subpoena seeking "incredibly extensive" and "sensitive proprietary business" information). At worst, given the

complete and total lack of relevance of Gateway's relationship with any other third party that had no involvement with the Plaintiff in the underlying case, it is overbroad to the point of harassment, and represents a violation of the serving party's obligation to "take reasonable steps to avoid imposing undue burden or expense" on non-party Gateway. *See* Fed. R. Civ. P. 45(d)(1) ("The court for the district where compliance is required must enforce this duty [to take reasonable steps to avoid imposing undue burden] and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.").

## Conclusion

For these reasons, Gateway respectfully requests this Court quash and/or forbid discovery of Document Request Nos. 2 and 9, and Deposition Topic Nos. 6-8 and 11.

Dated: August 15, 2022					Respectfully submitted,

							**DOWD BENNETT LLP**

							By: */s/ James B. Martin*
								James B. Martin #70219MO
								7733 Forsyth Blvd., Suite 1900
								St. Louis, MO 63105
								Telephone: (314) 889-7300
								Facsimile: (314) 863-2111
								jbmartin@dowdbennett.com

								*Attorneys for Movant Gateway Spine & Joint LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 15, 2022, a copy of the foregoing was served via email on counsel for Respondents, who agreed in advance to accept service via email.

/s/ James B. Martin